ALLEN J. HASTINGS, Appellant, *v.* THE BROOKLYN LIFE INSURANCE COMPANY, Respondent.

|138  473|
|143  436|

In an action upon a policy of life insurance the defense was a forfeiture of the policy by reason of non-payment of premiums. Plaintiff claimed a waiver of strict performance of the contract in this respect. It appeared that defendant accepted the note of the insured for a payment of premium, which note was renewed. The notes pledged the policy as security, and stated that in case of non-payment when due the policy should become void. The renewal note was not paid when due. *Held*, that the act of defendant in extending credit established a course of dealing between the parties, which it was necessary to terminate in some way before the policy could be treated as forfeited.

Defendant produced and put in evidence a letter-press copy of a letter from its secretary to the insured, notifying him that the renewal note was due and unpaid; that by reason thereof the policy lapsed and was canceled on its books, and requesting him if he had any desire to restore it to notify defendant at once. The secretary testified that he wrote and signed the letter and gave it to an attendant to copy in the letter-press book; that it was brought back to him in a condition showing it had been in the letter press; that he inclosed it in a sealed envelope and put it in a basket in the office, where letters for mailing were usually placed. Defendant's porter testified that it was his business to take the letters from the basket and mail them; that he mailed all letters found in the basket, but had no recollection of seeing or handling this letter. No such letter or paper was found among the papers of the deceased. *Held*, the

evidence was not sufficient to establish as matter of law that the letter was mailed, and a refusal to submit the question to the jury was error.

Plaintiff gave evidence of a conversation between the insured and defendant's secretary, before another payment of premium had fallen due, which was not paid, in which, as the witness testified, the secretary stated in substance that he would carry the insured and give him credit for premiums due and to become due. *Held,* that the question as to whether there was a promise to waive prompt payment was one of fact for the jury

However improbable the testimony of a witness may appear, who testifies to a fact not in itself impossible in the ordinary course of events, the credibility, force and effect of such testimony is for the jury.

The conversation was not at the general office of defendant, but was in another state. *Held,* that this did not affect the power of the secretary to bind the company.

The secretary of a corporation is one of its general managing agents, and when in the discharge of the duties of his office represents the corporation.

It is within the general powers of the secretary of a life insurance company to waive prompt payment of premiums about to fall due on one of its policies, and the valid exercise of his power in this respect does not depend upon the particular place where he may be at the time.

The test of his authority is not whether he acted in the general office of the company or in another state, but whether at the time he was engaged in the discharge of the general duties of his office.

Where the trial court directs a verdict, and thereafter on motion sets it aside and grants a new trial, on appeal from the order to the General Term the facts are not before it for the purpose of determining where the preponderance of testimony is, but the only question presented is as to whether the trial court committed an error in granting the new trial, and unless it is clear there was no evidence to submit to the jury, the order should be sustained

(Argued May 1, 1893 ; decided June 6, 1893.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday in January, 1892, which reversed an order of Special Term granting a new trial and directed judgment in favor of defendant upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Rumsey* for appellant.     It was no error for the court to direct a verdict in favor of the defendant.     (*Dilleber* v. *K. L. Ins. Co.,* 76 N. Y. 567; *Phelan* v. *N. M. L. Ins.*

*Co.*, 113 id. 147; *Baxter* v. *B. L. Ins. Co.*, 119 id. 450; *O. S. Co.* v. *Otis*, 100 id. 451; 1 Greenl. on Ev. § 13; 4 Best on Pres. § 3.) The plaintiff should have been permitted to go to the jury upon the question as to whether there was a waiver of or an extension of time for the payment of the premiums in question. (*Stern* v. *N. F. Ins. Co.*, 89 N. Y. 326.) From the course of dealing which had theretofore been followed between the insured and the defendant concerning this policy the insured might fairly and in good faith have supposed that an agent of the defendant would call upon him for payment of premiums or the renewal of notes when payment or note was to be insisted upon, and such supposition or assumption would have been warranted by the previous conduct of the defendant. (*Atty.-Gen.* v. *C. L. Ins. Co.*, 33 Hun, 138.) Chapter 341, Laws of 1876, as amended by chapter 221, Laws of 1877, relieved the insured of a default as to the premiums in question. (*Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 493; *Brink* v. *H. F. Ins. Co.*, 80 id. 112.) It cannot be presumed that Dutcher was exceeding his authority; on the contrary, it will be presumed he was acting within the limits of his power. (*Elwell* v. *Dodge*, 33 Barb. 339; *Howell* v. *K. L. Ins. Co.*, 44 N. Y. 285; *Messelback* v. *Norman*, 122 id. 583.) The course of dealing between Walter and the defendant, through the agent, Bartholomew, and its secretary, Dutcher, warranted the insured in assuming that Dutcher and Bartholomew had authority to waive prompt payment of the premiums. (*Wyman* v. *P. M. L. I. Co.*, 119 N. Y. 277.)

*William F. Cogswell* for respondent. Assuming that the agreement claimed by the plaintiff was made, it was put an end to by the letter of May twenty-seventh. (*Dana* v. *Kemp*, 4 Camp. 192; *Howard* v. *Daly*, 61 N. Y. 362, 366; 2 Whart. on Ev. § 1310.)

O'BRIEN, J. A recovery is sought in this action upon a policy of life insurance. At the last trial the court directed a verdict for the defendant, but subsequently, upon a case and

exceptions, set the verdict aside and granted a new trial. The General Term has reversed this order and reinstated the verdict as directed. The appeal involves simply an inquiry whether the case was one for the court or the jury. The defendant by its policy bearing date June 5, 1882, insured the life of Edwin A. Walter, of Kendall Creek, in the state of Pennsylvania, in the sum of $2,500, payable, in case of death within the life of the policy, to his executors, administrators or assigns. The insured died on October 6, 1886, and his personal representatives assigned the policy to the plaintiff. The defense is that the policy was not in force at the time of the death of the insured, by reason of his failure to pay the semi-annual premium that became due Dec. 5, 1885, and another payment which became due June 5, 1886. There is no claim that these payments were in fact ever made, but it is claimed that the defendant has waived strict performance of the contract in that respect, and that while they are still due to the defendant, and may be deducted from any recovery on the policy, yet the circumstances and dealings between the parties were such that an omission to pay the premiums on the day when due, according to the terms of the contract, did not produce a forfeiture or cancellation of the policy. In order to determine whether there was any question in the case for the jury it becomes necessary to examine the testimony and state the facts established or conceded. A note was given for the payment due Dec. 5, 1885, which became due March 5, 1886, but was not paid, and a new note was given in its place at sixty days. These notes contained a provision pledging the policy as security for their payment, and that in case of non-payment, when due, the policy should become null and void. The renewal note, which became due May 4, 1886, was not paid, but the act of the defendant in extending credit to the insured for premiums falling due upon pledge of the policy established a course of dealing between the parties which it was necessary to terminate in some way before the policy could be treated as forfeited and void. On the trial the defendant produced and put in evidence a letter-press

copy of a letter, signed by its secretary, bearing date May
27, 1886, addressed to the deceased at his place of residence
in Pennsylvania, notifying him that his note for premium on
the policy was due May 4, and was not paid. It stated
further that by reason of this non-payment the policy lapsed,
" and we are thereby obliged to cancel it on our books. If
you have any desire to restore it to full force be good enough
to inform us at once." This letter, if received by the deceased,
doubtless operated to terminate the course of dealing and to
render the policy void, unless he responded to it in a reason-
able time or paid the arrears of premium. If it had been
shown that the letter had been actually mailed to the insured,
the presumption would be that he received it. But we think
that the defendant did not prove the mailing of the letter so
conclusively as to warrant the court in taking the question
from the jury. The secretary swore that he wrote and signed
the letter and then gave it to an attendant to copy in the
book, who brought it back to him in such a condition as to
show that it had been in the letter press. The secretary, as
he swears, then folded and inclosed it in a sealed envelope,
with a notice upon it to return unless delivered, directed it to
the insured, and then put it in a basket in the office where
letters for mailing were usually placed. This is all the secre-
tary knew about the mailing of the letter, but the porter in the
office testified that his business was to take the letters from the
basket and mail them; that he mailed all letters found in the
basket, but had no recollection of ever seeing or handling this
particular letter. He knew nothing on that point except what
is to be inferred from his usual custom and practice. On the
other hand it was shown that no such letter was found among
the letters or papers of the deceased, who was a physician,
and, aside from what the porter testified to as to mailing, there
was no fact or circumstance shown that would warrant the
conclusion that he had received it.

It could not be held, therefore, as matter of law, that the
facts shown established the mailing of the letter. While the
facts and circumstances in support of that conclusion are quite

persuasive and would amply warrant the jury in finding that
it had been mailed, yet the question was one within their
province and should not have been determined by the court.
If, however, there is no sufficient answer to the default in the
payment of the premium that fell due on the 5th of June,
1886, following the date of the letter, the question thus far
considered would not be material. On the part of the plaintiff,
some proof was given of a conversation between the deceased
and the secretary of the defendant on or about May 5, 1886,
at or near the place of residence of the insured in Pennsyl-
vania. The witness who testified as to this conversation was
the same person who was or had been the defendant's local
agent in the territory where the insured lived, and who
had charge of the collection of premiums there. He was
not able to give the language used by the parties to this
conversation, nor was his recollection of its substance very
clear, but after several questions were put to him by counsel
and the court, he finally swore that his best recollection of the
substance of the conversation was that the secretary said to
the insured that they would carry him and give him credit for
premiums due and to become due thereafter. If this testi-
mony stood alone it might be regarded as somewhat improb-
able, at least, but there are some conceded facts and circum-
stances that might be considered, possibly, as giving it some
support. There is no doubt or dispute as to the fact that the
secretary was there and met the deceased and had a talk with
him in regard to the policy. The insured was the defendant's
medical examiner in the locality, and the company or its
officers were desirous of retaining him for some reason as one
of its policyholders. The secretary himself admits this, and
also that he urged the insured to retain his policy and that he
told him they would give him time, but whether this related
to the note that had just fallen due or to the premium to fall
due a month afterwards is not clear. Whether there was in
fact any promise or agreement on the part of the defendant
to waive prompt payment of the June premium was, we
think, under all the circumstances, a question for the jury.

However improbable the testimony of a witness may appear, who testifies to a fact not in itself impossible in the ordinary course of events, the credibility, force and effect of such testimony is for the jury. If the statement of this witness in its full scope and length is to be accepted, then there was an agreement between the insured and the defendant's secretary, acting in its behalf, to the effect that credit would be given for the premiums due and to fall due if the officer had the power to bind the company by such an agreement or promise. The learned General Term was of the opinion that, as the secretary was at the time in another state and not at the general office of the company, he had no power to bind it. We cannot concur in this view. The secretary is one of the general managing agents of a corporation, and when in the discharge of the duties of his office, he represents the corporation itself. To waive prompt payment of a premium about to fall due is an act within the general powers of the secretary of a life insurance company. The president or other general officer of a corporation has power, *prima facie*, to do any act which the directors could authorize or ratify. (*Conover* v. *Insurance Co.*, 1 N. Y. 290; *Booth* v. *Farmers' & M. N. Bank*, 50 id. 396; *Leslie* v. *Lorillard*, 110 id. 519; *Holmes* v. *Willard*, 125 id. 75; *Patterson* v. *Robinson*, 116 id. 193; *Rathbun* v. *Snow*, 123 id. 343; *N. Y., P. & B. R. R. Co.* v. *Dixon*, 114 id. 80; Morawetz on Corporations, §§ 251–253.)

There was no reason, and we are not referred to any controlling authority, for holding that the valid exercise of his powers depends upon the particular place where he may be at the time. The true test of his authority to bind the corporation is not whether he acts in the general office or in a distant state, but whether, at the time, he is engaged in the discharge of the general duties of his office, and in the business of the corporation. These views lead to the conclusion that the case should have been submitted to the jury. The facts were not before the General Term in such a form as to require it to determine where the weight and preponderance of the testimony was. The only question was whether the trial judge committed an error in setting aside the verdict which he had directed, and granting a new trial. He was

authorized to review his own action on a motion for a new trial, and if satisfied that he had committed an error in refusing to submit the case to the jury, or in any other respect, to grant a new trial. He had the advantage· of seeing the witnesses. and observing their general intelligence, demeanor in testifying, and apparent fairness and candor, and unless in such a case it is clear that there was no evidence whatever to submit to the jury his order should be sustained. (*Devlin* v. *Greenwich Savings Bk.*, 125 N. Y. 757.) We have already expressed our views on that question, and, indeed, the learned General Term did not hold that the case was destitute of all evidence to go to the jury as to the alleged agreement between the insured and the defendant's secretary to waive the payment of the premium about to become due, but only that the secretary did not possess the power to bind the company thereby at the place where he then was.

The order of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur.

Ordered accordingly.