Frank H. Twyeffort et al., Copartners under the Firm Name of Twyeffort & DuBois, Appellants, v. Unexcelled Manufacturing Company, Inc., Respondent.

(Argued October 11, 1933; decided November 21, 1933.)

*Warren C. DuBois* and *Frank H. Twyeffort,* appellants in person. The president of defendant had the power to make the agreement with plaintiffs for which they seek recovery under the second cause of action in the complaint. (*St. John* v. *Fulton Market Realty Corp.,* 248 N. Y. 636; *Hardin* v. *Morgan Lithograph Co.,* 247 N. Y. 332; *American Ins. Co.* v. *Oakley,* 9 Paige, 496; *Blue Goose Mining Co.* v. *Northern Light Mining Co.,* 245 Fed. Rep. 727; *Winfield Mtg. & Trust Co.* v. *Robinson,* 89 Kan. 842; *Municipal Gas Co.* v. *Zachry,* 146 Okla. 203; *Beebe* v. *Beebe Co.,* 64 N. J. L. 497; *Fernald* v. *Spokane & British Columbia T. & T. Co.,* 31 Wash. 672; *Ransome Concrete Machinery Co.* v. *Moody,* 282 Fed. Rep. 29; *Dallas Ice-Factory & Cold-Storage Co.* v. *Crawford,* 18 Tex. Civ. App. 176; *Teele* v. *Consolidated Amusement Co.,* 102 N. Y. Supp. 666; *Potter* v. *N. Y. Infant Asylum,* 44 Hun, 367; 118 N. Y. 684; *Catholic Foreign Mission Society* v. *Oussani,* 215 N. Y. 1; *Lee* v. *Pittsburgh Coal & Mining Co.,* 56 How. Pr. 373.)

*Henry K. Heyman* and *Norbert Heinsheimer* for respondent. Defendant's president had no authority to contract for the extra or additional retainer and he could not make any contract for unusual and extraordinary services. (*Trulock* v. *Kings County Iron Foundry, Inc.,* 216 App. Div. 439; *Hardin* v. *Morgan Lithograph Co.,* 247 N. Y. 332; *Watkins Salt Co.* v. *Mulkey,* 225 Fed. Rep. 739; *Heaman* v. *Rowell Co.,* 261 N. Y. 229; *Matter of Timmis,* 200 N. Y. 177; *Berwin & Co.* v. *Hewitt Realty Co.,* 199 App. Div. 453; 235 N. Y. 608.) The president had no authority to contract for the retainer because there was no exceptional authority shown to have been given by the board of directors. (*Catholic Foreign Mission Society* v. *Oussani,* 215 N. Y. 1; *Morrell* v. *Peck,* 88 N. Y. 398;

*Deutschmann* v. *Third Avenue R. R. Co.*, 87 App. Div. 503; *Thayer* v. *Schley*, 137 App. Div. 166; *Caskie* v. *International Ry. Co.*, 261 N. Y. 47; *Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103; *Helgar Corp.* v. *Warner's Features, Inc.*, 222 N. Y. 449; *People* v. *Bresler*, 218 N. Y. 567; *Cox* v. *Stokes*, 156 N. Y. 491.)

KELLOGG, J. The plaintiffs were members of a firm of lawyers, practicing their profession under the name of Twyeffort & DuBois. Twyeffort, while a member of such firm, for a period of about ten years was general counsel for the defendant corporation. The retainer covered " all legal work of a routine and general nature, exclusive of litigative, out-of-town and out-of-the ordinary services." When the defendant, on the 15th of February, 1929, terminated the defendant's employment of Twyeffort, there was still due upon the general retainer the sum of $375, which the defendant never paid. In addition, Twyeffort, at the request of Edmund J. Bingle, the president of the defendant, during the three years prior to the termination of his employment, had performed services not comprehended by the general retainer. These consisted of drafting plans for a consolidation of the defendant with its competitors, conducting a similar business; obtaining the data necessary to perfect the plan; visiting various competitors within and without the State of New York, for the purpose of ascertaining the amount of their assets and the extent of their liabilities; discussing consolidation plans with such competitors, and persuading them to the view that a consolidation would prove beneficial. These services were " out of the ordinary services," not included within the general retainer, and were of the reasonable value of $5,000. These facts were found both by the Special Term and the Appellate Division. Nevertheless, the judgment of the Special Term, adjudging a recovery in favor of the plaintiffs upon its claim of $375 for a balance due upon the general retainer, and upon its claim of $5,000 for additional services, was modified by the Appellate Division to the

extent that the latter claim was dismissed. The difference between the Special Term and the Appellate Division seems to have been that the former found that the president had power to employ the plaintiffs for the special services rendered, while the latter found that he had no such authority.

The authority of a president to make contracts for a corporation has recently been restated by this court in *Hardin* v. *Morgan Lithograph Co.* (247 N. Y. 332, 338) to be as follows: " The presumption as to the authority of the president of a corporation has been broadly stated: ' The president, having full personal charge of the business which the defendant was organized to transact, represented the corporation and *prima facie* he had power to do any act which the directors could authorize or ratify.' (*Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 473, 479.)" Edmund J. Bingle, the president of the defendant, had full charge of the corporate business to the extent that he made sales and purchases of property for the corporation, and signed contracts on its behalf, without " bothering the board of directors." It is said that the board of directors could not have authorized or ratified the employment of Twyeffort, to formulate plans and do the preliminary work necessary to effectuate a consolidation, for the reason that no consolidation might be had without the consent of stockholders. This is an evident *non sequitur*, as we found a similar argument to be in the case of *St. John* v. *Fulton Market Realty Corp.* (248 N. Y. 636), where we held " that the apparent authority of the president of the corporation to employ a broker to sell real property is not dependent upon the existence of authority on his part to enter into a binding contract for the sale thereof." It is likewise said that the very basis of a recovery for the special services, as not covered by the retainer, is that they were out-of-the ordinary; *ergo*, they must be extraordinary services, for the performance of which the president could have no implied authority to contract, as in *Heaman* v. *Rowell Co.* (261

N. Y. 229). This again is a *non sequitur*, for services which are extraordinary, as compared with the usual services comprehended by a general retainer, are not necessarily such when compared with ordinary services the employment of which is within the implied powers of a corporate executive. The standard of comparison not being the same, the meaning of the word, in the two instances, is not the same. In the case cited, the extraordinary nature of the employment contracted for, viz., an employment for life, is apparent. In this case, even assuming that the question of the implied power of the president was a mixed question of law and fact, we think the Special Term was well within its rights when it drew the inference that the president possessed the authority to make a contract for the special services in question.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. (See 263 N. Y. 585.)

POUND, Ch. J., CRANE, O'BRIEN, HUBBS and CROUCH, JJ., concur; LEHMAN, J., dissents.

Judgment accordingly.